# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1098
Filed June 10, 2026

————————————

**In the Interest of R.B., Minor Child,**

**A.C., Mother,**
Petitioner-Appellee,

**J.R., Father,**
Respondent-Appellant.

————————————

Appeal from the Iowa District Court for Jasper County,
The Honorable Richard B. Clogg, Judge.

————————————

**AFFIRMED**

————————————

Denise M. Gonyea of McKelvie Law Office, Grinnell, attorney for
appellant father.

Dusty Clements (until withdrawal) of Clements Law & Mediation, Newton,
attorney for appellee mother.

Kelly M. Ramsey of Ramsey Law, PLC, West Des Moines, attorney and
guardian ad litem for minor child.

————————————

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Chicchelly, J.

1

**CHICCHELLY, Judge.**

A father appeals from an order terminating his parental rights under Iowa Code chapter 600A (2024). He challenges the findings that he has abandoned the child and that termination is in the child's best interest. Because the mother proved the father abandoned the child under Iowa Code section 600A.8(3)(b) and termination is in the child's best interest, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

This action concerns R.B., who was born in 2013. R.B. lives in Newton with his mother, who is his physical caretaker. They share the home with the mother's fiancé and the child's half-sister. The child's father shares legal custody of the child. A custody decree allows him visitation alternating weekends and requires that he pay child support to the mother.[1]

Around 2020, the father suffered a traumatic brain injury in a serious motorcycle accident and spent three months in a coma. After a nine-month hospital stay, the father moved from Iowa to live with his mother in Georgia. Due to his injuries, the father receives Supplemental Security Income and the child receives about $300 per month in dependent benefits. The father does not contribute any additional financial support for the child.

The father has not exercised his visitation with the child since his accident. He had one brief contact with the child in October 2021. The father did not contact the mother about the child again until August 2024 when he asked to visit the child while passing through Iowa. Due to the

---

[1] The original decree provided shared physical custody of the child. The mother petitioned to modify the decree to grant her physical care in 2020, which the court granted after the parties entered a stipulated agreement.

length of his absence, the mother refused his request. Two weeks later, she petitioned to terminate the father's parental rights under chapter 600A.

In April 2025, the guardian ad litem filed a report that recommended terminating the father's parental rights. After a May 2025 hearing, the court found the father abandoned the child as defined in Iowa Code section 600A.2(20) and the mother proved the grounds for termination under section 600A.8(3). The court found that terminating the father's parental rights serves the child's best interest and granted the petition.

## SCOPE AND STANDARD OF REVIEW

We review private termination proceedings de novo. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *Id.* (citation omitted).

## DISCUSSION

Termination proceedings under chapter 600A involve a two-step process. *See In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018). First, the parent petitioning to terminate parental rights must prove the statutory ground for termination by clear and convincing evidence. *Id.* If that burden is met, the court then considers the child's best interest. *Id.*

## I. Does the evidence support terminating the father's parental rights under Iowa Code section 600A.8(3)?

The court may terminate parental rights if a parent abandons a child. Iowa Code § 600A.8(3). If the child is six months of age or older, the parent "is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child." *Id.*

3

§ 600A.8(3)(b). To show "substantial and continuous or repeated contact," a parent must contribute a reasonable amount of support for the child "according to the parent's means." *Id.* The parent must also show substantial and continuous or repeated contact by doing any of the following:

> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.* A parent's subjective intent alone will not prevent the court from finding the parent has abandoned the child. *Id.* § 600A.8(3)(c).

The district court found that the father failed to maintain substantial and continuous or repeated contact with the child. We agree. The father had only one brief visit with the child in five or six years. Before the mother petitioned to terminate his parental rights, the father did not contact the mother about the child for almost three years. The father never informed the mother when he moved to Georgia. Although the father made claims that the mother somehow prevented him from contacting the child, there is no evidence supporting his claim and he took no steps to enforce his parental rights.

The father blames his lack of contact on the "significant physical and mental damage" he suffered during his motorcycle accident, which he claims impeded his ability to reach out to his son. The father testified that his "brain

4

clicked back on" about nine months before the termination hearing, which is when he contacted the mother. But the father was inconsistent in visiting the child before then. He refused the mother's offer to bring the child to the hospital to visit him after his accident and had one brief contact with the child before disappearing for almost three years. Even after the mother filed this action, the father waited four months to reach out to her again. As the guardian ad litem noted in her report to the court, the messages suggest that the father was motivated more by appearance ahead of trial than by the child's best interests.[2]

The evidence supports termination under section 600A.8(3)(b).

## II.    Is terminating the father's parental rights beneficial to the child?

We next turn to the question of the child's best interest, which is "the paramount consideration" in interpreting chapter 600A. *See* Iowa Code § 600A.1(1). "The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent." *Id*. § 600A.1(2). When determining whether a parent has affirmatively assumed this duty, we consider a parent's "fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id*.

We agree that terminating the father's parental rights serves the child's best interest. The father has not had contact with the child for half of

---

[2] Additionally, the father never appeared for a scheduled meeting with the guardian ad litem and never responded to additional attempts to set up an interview. The guardian ad litem expressed concern that this showed the father's "lack of understanding or recognition of the impact his absence has had on [the child]'s well-being."

his life.  Due to his lengthy absence, the child has no relationship with the father.  The guardian ad litem expressed deep concern about the father's "failure to acknowledge how his actions and prolonged absence have affected [the child]'s mental and emotional health."  In contrast, the child has developed a strong paternal relationship with the mother's fiancé, who has shown his commitment to the child and wishes to adopt him.  Terminating the father's parental rights will have little effect on the child's life aside from allowing legal recognition of the role the fiancé plays in the child's life.  We therefore affirm.

**AFFIRMED.**